IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bonnett Delores Haskell, | ) | C/A No. 0:09-3258-HFF-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

     This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Bonnett Delores Haskell ("Haskell"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

     In June 2006, Haskell applied for SSI and DIB. Haskell's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 12, 2009 at which Haskell appeared and testified and was represented by Charles Turner, a non-attorney. After hearing testimony from a vocational expert, the ALJ issued a decision dated June 3, 2009 finding that Haskell was not disabled. (Tr. 9-21.)

     Haskell was born in 1959 and was 49 years old at the time of the ALJ's decision. (Tr. 19, 27.) She completed an associate's degree in business management and has past relevant work experience as a cashier, criddler, auto parts inspector, production worker, secretary, and healthcare

industry technician.  (Tr. 29, 157, 172.)  Haskell alleges disability since December 1, 2005 due to

chronic headaches, a back impairment, Crohn's disease, stress, anxiety, and panic attacks.  (Tr. 171.)

The ALJ made the following findings and conclusions:

1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2.     The claimant has not engaged in substantial gainful activity since December 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

* * *

3.     The claimant has the following severe impairments:  fibromyalgia and degenerative disk and joint disease, status post anterior cervical diskectomy and fusion (20 CFR 404.1520(c) and 416.920(c)).

* * *

4.     As discussed in detail above, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with restrictions which require she lift or carry 10 pounds occasionally and less than 10 pounds frequently and not stand and/or walk over 2 hours in an 8-hour workday.  Additionally, she must only occasionally be required to stoop, balance, crouch, kneel and climb stairs or ramps; never crawl or climb ladders or scaffolds; and, avoid hazards such as unprotected heights, vibration and dangerous machinery.  Finally, the work environment must not require repetitive fine dexterity or gripping bilaterally.

* * *

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7.     The claimant was born on [REDACTED], 1959 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.  (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a



finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

*    *    *

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-21.)

Haskell filed a request for Appeals Council review which was denied on October 20, 2009, making the decision of the ALJ the final action of the Commissioner.  (Tr. 1-4.)  Haskell filed this action on December 21, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)  whether the claimant is engaged in substantial gainful activity;

(2)  whether the claimant has a "severe" impairment;

(3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



(4)     whether the claimant can perform [her] past relevant work; and

(5)     whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant

PJG

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d

at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence,

make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold

it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

Haskell raises the following issues for this judicial review:

I.      The ALJ's residual functional capacity findings require a finding that Haskell
        is disabled.  Alternatively, the vocational testimony was insufficient to
        establish there were other jobs that Haskell could perform in significant
        numbers.

II.     The ALJ did not perform the analysis of the treating and evaluating physician
        opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-
        5p.

(Pl.'s Br., ECF No. 12.)  The court addresses these issues in reverse order.

## DISCUSSION

**A.      Treating Physician Analysis**

Typically, the Social Security Administration accords greater weight to the opinion of

treating medical sources because treating physicians are best able to provide "a detailed, longitudinal

picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

However, "the rule does not require that the testimony be given controlling weight." Hunter v.

Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is

evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has

examined the applicant, (2) the treatment relationship between the physician and the applicant,

(3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In the case at bar, the ALJ was faced with extensive medical records and opinions of various physicians who had treated Haskell. Specifically, Haskell argues that the ALJ improperly rejected the opinion of Dr. Charles Shissias, who treated Haskell between June of 2008 and January 2009. Dr. Shissias noted the following diagnoses for Haskell: fibromyalgia, myofascial pain syndrome, and pain in her neck. Responding to a form questionnaire, he opined that Haskell's impairments were of the severity such they would interfere with her attention and concentration. He noted that she was able occasionally to lift fifty pounds and frequently to lift twenty pounds. He further noted that she could occasionally twist, stoop or bend, crouch, and climb ladders and stairs, but that she could sit and stand for a total of only two hours a day for each position. His notes also show that Haskell had significant limitations in performing repetitive reaching, handling, and fingering because of her neck pain. He opined that she could not perform useful fine or gross dexterity on a job, and could work only about a quarter of a day. Dr. Shissias further opined that she was likely to be absent from work for more than four days per month due to her impairments or treatment. (Tr. 1056-58.)

The ALJ provided numerous reasons for rejecting the opinion of Dr. Shissias. Haskell attacks each of these reasons in turn. For example, she points out that the ALJ erroneously stated in his decision that Dr. Shissias had treated Haskell on only two occasions. The Commissioner concedes that the ALJ's observation on this fact was in error, and that Dr. Shissias actually saw

Haskell four times:  in June, August, and October of 2008, and in January 2009.[1]  Despite this inaccuracy, the court finds that Haskell has failed to show that the ALJ's decision to reject the opinion of Dr. Shissias was not supported by substantial evidence or was controlled by an error of law.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding it to be harmless error where the ALJ identified some reasons that were incorrect but also relied on other, legally valid reasons).

The ALJ provided various other reasons for rejecting the opinion of Dr. Shissias. In addressing one of these, Haskell contends that the ALJ should not have rejected Dr. Shissias's opinion on the ground that he included no restrictions on Haskell in his treatment notes, arguing that physicians often do not write restrictions in their treatment notes but rather convey them orally to the patient.  However, a review of the written decision shows that the ALJ determined not that the treatment notes were silent but rather that the restrictions imposed by Dr. Shissias *conflicted* with his treatment notes, as he found that the "limitations and restrictions [Dr. Shissias] offered to be out of line with his treatment notes." (Tr. 19.)  As the Commissioner points out, those notes show that Haskell was alert, oriented, and in no apparent distress, with intact sensation and good muscle strength in her arms and legs.  They reflect that she had symmetrical reflexes, no muscle atrophy or significant changes in muscle tone, no edema, and no gait ataxia.  (Tr. 1035-38, 1045-46, 1049-50.) Moreover, despite Haskell's complaints of muscle weakness in October 2008, Dr. Shissias observed only equivocal weakness in her right hand at that time and found no motor weakness at her January 2009 visit.  (Tr. 1049, 1046.)

---

[1] This discrepancy is perhaps explained by the fact that Dr. Shissias moved to a new medical practice, so the third and fourth visits took place at a different location.  (See Pl.'s Brief at 27, ECF No. 12 at 27.)

PJG

Additionally, the ALJ found that the limitations imposed by Dr. Shissias were internally inconsistent. The ALJ contrasted the restriction imposed by Dr. Shissias that Haskell not sit, stand, or walk more than approximately two hours in an eight-hour day with Dr. Shissias's finding that Haskell retained the ability to lift up to fifty pounds occasionally and twenty-five pounds frequently. Although Haskell attempts to reconcile those two apparently conflicting findings,[2] the court cannot say that the ALJ's determination that they were inconsistent is unsupported. This is especially so in light of his finding that Dr. Shissias's limitations were inconsistent with those of other physicians who had treated Haskell and had advised her to exercise regularly.

Thus, the record shows that the ALJ essentially found Dr. Shissias's opinion that Haskell had extreme limitations in functioning to be at odds with his treatment notes and those of Haskell's other treating physicians. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); 20 C.F.R. § 404.1527(d)(2)(i), (ii) & § 416.927(d)(2)(i), (ii) (permitting an ALJ to consider the length, nature, and extent of the treatment relationship in evaluating a medical opinion); Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004) (finding that ALJ properly discounted a treating physician opinion where no other treating physician consistently observed limitations at the level of severity described by the doctor in question); see also Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the various treating and

---

[2] Specifically, Haskell admits that "the RFC [as opined by Dr. Shissias] is a little out of the ordinary" but argues that a finding that Haskell retained the gross motor ability to lift up to an amount of weight indicating a medium level of exertion is not inconsistent with significant restrictions on "activities that required greater hand strength over arm and body strength." (Pl.'s Br. at 29, ECF No. 12 at 29.) This argument misses the mark, however, as the findings of Dr. Shissias that the ALJ found to be inconsistent all involved gross motor movements—lifting, walking, standing, sitting—and not a comparison of gross versus fine motor strength as Haskell suggests.

PJG

examining physicians."). The ALJ further found the limitations imposed by Dr. Shissias to be internally inconsistent. See Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)). Although Haskell challenges these reasons as unpersuasive and attempts to explain away the multiple grounds relied upon by the ALJ, these arguments are insufficient to show that the ALJ's decision not to give Dr. Shissias's opinion controlling weight is not supported by substantial evidence or is controlled by an error of law.

**B.     Residual Functional Capacity**

In support of her argument that the ALJ erred in determining her residual functional capacity ("RFC"), Haskell relies on a 1996 Social Security Ruling that she contends mandates a finding of disability where a claimant is completely precluded from repetitive fine or gross dexterity actions with either hand. See SSR 96-9p. However, as the Commissioner points out, that Social Security Ruling was based upon a regulation that was amended in 2002 in manner significant to Haskell's claim. At the time SSR 96-9p was issued, the social security regulations provided that a finding of disability was appropriate where a claimant was limited to sedentary jobs not requiring bilateral manual dexterity. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h) (1997). Section 201.00(h) now provides that in those circumstances where a claimant cannot perform a full range of sedentary work, the ALJ must make an "individualized determination that considers that impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust." Compare 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h) (2010) with 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h) (1997).

The record shows that the ALJ complied with this requirement.  Here, the ALJ assessed Haskell's RFC and propounded to a vocational expert a hypothetical question that included Haskell's limitations as determined by the ALJ, including the limitation of no repetitive fine dexterity or gripping bilaterally. (Tr. 61.) The vocational expert identified three sedentary jobs that an individual with those limitations could perform.  (Tr. 62.)  Although Haskell argues that these jobs could not be performed by someone with Haskell's limitations as to dexterity and gripping and that the vocational expert's testimony contradicted the Dictionary of Occupational Titles ("DOT"), the Commissioner points out that the DOT descriptions of the jobs identified by the vocational expert require only a low degree of aptitude for finger and manual dexterity, with only occasional fingering and frequent handling.  Thus, none of those jobs appears to require repetitive fine dexterity or gripping bilaterally.  Based on this testimony by the vocational expert, the court finds that the ALJ's determination that there were other jobs that Haskell could perform in significant numbers in the national economy is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the court finds that Haskell has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 27, 2011
Columbia, South Carolina.

*The parties' attention is directed to the important notice on the next page.*

Page 10 of  11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).